## HALL *v.* THE STATE, EX REL. ROBINSON ET AL.

WITNESS.—*Administrator.*—Where suit was brought on an official bond against the principal and a surety and the administrator of a deceased surety, and the process was returned, as to the administrator, "not found," and no steps were taken to have the cause continued as to such administrator for further process, and the plaintiff proceeded to trial as to the other defendants, the suit abated as to the administrator, and he was not afterward a party, if he was so before, and the plaintiff could testify as a witness in his own behalf.

RATIFICATION.—*Liability as Surety.*—Where the surety denied that he executed the bond, and there was evidence that he afterward assented to his name's remaining on the bond, the jury were authorized to find him liable on the bond for money received by his principal after such assent, and not paid over.

APPEAL from the Greene Common Pleas.

DOWNEY, J.—This was an action commenced in the name of the State, on relation of Walter A. Robinson and Rollin A. Blount, against James Eaton, administrator of the estate of William C. Piper, deceased, Lawson Oliphant, and John T. Hall, the appellant, before a justice of the peace, on the official bond executed by said Piper, with Oliphant and Hall as his sureties, for the proper discharge of his duties as justice of the peace. The breach of the bond alleged is, that Piper had collected and received money of the relators, due on certain judgments on his docket, which he had failed and refused to pay over to them on demand. Hall filed a verified answer before the justice of the peace, denying the execution of the bond by him. Oliphant filed no answer. Eaton, the administrator, was not found. Upon a trial before the justice of the peace, there was a finding and judgment for the plaintiffs against both Oliphant and Hall. Hall alone appealed to the common pleas, where there was a trial by jury, verdict for the plaintiff, motion for a new trial by the defendant overruled, and final judgment rendered for the plaintiff. From this judgment Hall appealed to this court, and has here assigned as errors, the insufficiency of the complaint, and the refusal to grant him a new trial.

The objection urged to the complaint is, that no copy of the bond was filed with it. This objection is obviated by an

addition to the transcript certified up by the clerk of the common pleas since the error was assigned, showing that a copy of the bond was filed.

The reasons for a new trial are, first, that the verdict is not sustained by sufficient evidence; second, it is contrary to law; and third, for error of law occurring at the trial, and excepted to by the defendant.

One question made and discussed under this head is that relating to the admission of the testimony of Robinson, one of the relators, to prove that he demanded of Piper the payment of the money in his lifetime, and before the commencement of the action. It is objected by counsel for the appellant, that Robinson was not a competent witness, because the administrator of Piper was a party to the action. The statute provides, "that in all suits where an executor, administrator, or guardian is a party in a case where a judgment may be rendered either for or against the estate represented by such executor, administrator, or guardian, neither party shall be allowed to testify as a witness, unless required by the opposite party, or by the court trying the cause," etc.

When the process was returned not found as to the administrator, and no steps were taken to have the cause continued as to him for further process, and the plaintiff proceeded to trial as to the other defendants, the suit abated as to the administrator, and he was not afterward, if he was before, a party to the action. *Kittering* v. *Norville, ante,* p. 183, and cases there cited.

No judgment in the action could have been rendered, either for or against the estate represented by him. We think, therefore, that the testimony of the witness was properly received.

Upon the question as to the sufficiency of the evidence, it is earnestly contended by counsel for the appellant that the judgment should be reversed. The facts are peculiar. Hall could write, and was accustomed to sign his own name, and yet the signature to the bond was not in his handwriting, but was in the handwriting of one Jamison. Jamison testi-

fied that the signature was in his handwriting; that he had no recollection that Hall ever gave him any authority to sign the bond, nor of any circumstance connected with the signing of it; that Hall can write a tolerably good hand, and that he never knew him to execute any instrument unless he signed his own name. Hall himself testifies that he could write; that he never signed the bond, nor did he ever authorize any one else to do so; and that he did not know that his name was signed to the bond until during the winter of 1867.

Marsh King swore, that in March, 1868, Hall told him that he was Piper's security on his bond; that Piper's time as justice was nearly out, and he hoped it would all be right.

William Bridewell testified that there was a talk about Piper's being arrested for not paying over fines in the winter or spring of 1867; Hall went to see Piper, who was sick, and afterward informed him that he understood that his name was on Piper's bond, that he had learned that Piper would be sued for fines that he had collected and failed to pay over, that Piper had showed him a list of the fines, and told him that he had left one hundred and thirty-six dollars with the county auditor to pay the amount of the fines; that Hall said he was better satisfied, and witness understood that he was willing to remain on Piper's bond; that Hall said he had intended to get off the bond, but was willing to remain on, and hoped that all would come out right.

J. T. Oliphant testified that while Piper was sick, Hall came to his store, and he asked him if everything was all right; and he said that he had been to see Piper and was better satisfied, that he had told Piper that he was not on his bond, which ruffled Piper very much, but that he told Piper that he would stand on the bond if he fixed things up right.

J. T. Smith, clerk of the courts of Greene county, testified that he received a letter from Hall in the winter or spring of 1867, containing a request that he would have Hall's name taken off Piper's bond.

Lawson Oliphant testified that some one had been to Bloomfield, and when he came back, reported that he and Hall were the sureties on Piper's bond; that Hall then said he had no recollection of signing his name to the bond; that he afterward heard Hall say that he had been to see Piper about the bond, and that Hall represented himself satisfied; that he said he had sent to Bloomfield and found out that his name was on the bond; that he was not willing to stand on the bond any longer; this was in the first conversation; afterward, when Hall had been to see Piper, he said Piper had satisfied him that there would be no trouble; that Hall said, on all occasions, that he intended to get off the Piper bond.

We are of the opinion that we cannot, without a violation of the rule which governs this court with reference to questions of fact, disturb the judgment on account of the insufficiency of the evidence to support the verdict of the jury.

The only other question is as to the correctness of the following charge by the judge to the jury, to which the defendant excepted:

"Fourth. The most difficult question that the jury will have to determine is, whether the bond sued on is or is not the bond of the defendant. Hall is not liable upon the bond, unless he signed the same, or authorized some person to sign it for him; or unless, after he ascertained his name was on the bond, he ratified the same; and he might ratify it by express words, or by acts that would imply his assent thereto."

The evidence shows that the judgment of the relators against Ryors was rendered by the justice of the peace on the 14th day of September, 1866, and that the justice received payments on the judgment as follows: January 7th, 1867, twenty dollars; September 26th, 1867, twelve dollars; October 2d, 1867, ten dollars and fifty cents; and that Piper paid over to the relators twenty dollars January 7th, 1867. The other judgment, the one against East, was rendered January 26th, 1867. On this, Piper received the full amount,

twenty-seven dollars and fifteen cents, on the 27th day of June, 1867; of this amount, Piper had paid the relators ten dollars.

Hall swears that he knew in the winter of 1867, that is, as we understand, 1866 and 1867, that his name was on the bond as a security, and the evidence shows that to some of the witnesses he expressed himself satisfied, or better satisfied, and willing to remain on the bond. It was after this time, after or during the winter of 1867, that is, of 1866 and 1867, that all the money was received by Piper. By consenting to remain the security of Piper, and thus enabling him to continue to act as justice of the peace and receive the sums of money in question, we think the jury might have found that he ratified the act of Jamison in affixing his name to the bond, if it was signed by Jamison, whether he had originally authorized it or not, so far as this case is concerned.

Without deciding that the instruction in question is or is not exactly correct as a general proposition, we think that, in its application to the case made by the evidence, it is not erroneous.

The judgment is affirmed, with costs.

*C. F. McNutt, G. W. Grubbs, W. A. Montgomery, A. G. Cavins,* and —— *Shryer,* for appellant.

*J. D. Alexander, E. E. Rose,* and *E. H. C. Cavins,* for appellee.